UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| TRACY L. RUBMAN; JAMES ELLERY BAKER; KATHY A. LOTHIAN,<br><br>        Plaintiffs,<br><br>v.<br><br>BAYER AG; MONSANTO COMPANY; BAYER CROPSCIENCE L.P.; SOLUTIA, INC.; PHARMACIA, L.L.C.; PHARMACIA, INC.; and PHARMACIA CORP.<br><br>        Defendants. | No. 2:22-CV-181-WKS |

**EMERGENCY MOTION TO PRESERVE EVIDENCE,
REQUEST FOR EXPEDITED DISPOSITION,
AND
REQUEST FOR HEARING**

Monsanto Company, Bayer CropScience LP, Solutia Inc., and Pharmacia LLC ("Defendants[1]") move for an order preventing the Burlington School District ("BSD")[2] from demolishing Burlington High School until Defendants have had a reasonable opportunity to inspect and preserve evidence that not only lies at the heart of this case, but is likewise central to

---

[1]     In March 2000, the former Monsanto Company changed its name from Monsanto to Pharmacia Corporation, n/k/a Pharmacia LLC ("Pharmacia"). Pharmacia Inc. and Pharmacia Corporation, as named in the Complaint, do not exist. To the extent Pharmacia Inc. and Pharmacia Corporation are deemed to be properly named Defendants, they are joining in this Motion.

[2]     The Court has jurisdiction over BSD – a nonparty operating in Burlington, Vermont – to preserve evidence relevant to the case before the Court. *See*, *e.g.*, *Bright Sols. for Dyslexia, Inc. v. Doe 1*, No. 15-CV-01618-JSC, 2015 WL 5159125, at *3 (N.D. Cal. Sept. 2, 2015) (granting a preservation order against a nonparty "where the entities that have the information . . . have no duty to preserve absent a court order"); *Arkin v. Gracey-Danna, Inc*., No. 8:16-CV-1717-T-35AAS, 2016 WL 3959611, at *2 (M.D. Fla. July 22, 2016) (same); *Swetlic Chiropractic & Rehab. Ctr., Inc. v. Foot Levelers, Inc*., No. 2:16-CV-236, 2016 WL 1657922, at *3 (S.D. Ohio Apr. 27, 2016) (same); *Centurylink, Inc. v. Alpine Audio Now, LLC*, No. 15-CV-01973-MSK-KLM, 2016 WL 192291, at *2 (D. Colo. Jan. 15, 2016) (same); *Deggs v. Fives Bronx, Inc*., No. CV 19-406-BAJ-EWD, 2020 WL 3100023, at *6 (M.D. La. June 11, 2020) (same).

a separate civil action filed just ten days ago, on December 9, 2022, by the school district itself, in which BSD seeks approximately $190 million in damages.³ Notwithstanding these recently filed lawsuits and the multimillion dollar damages at stake, BSD has stated that it intends to demolish the high school starting on *January 23, 2023* – approximately one month from now – and just 45 days after BSD filed its suit against Defendants. As of the date of this Motion, Defendants have not even been served with the BSD Complaint.

Simply put, Burlington High School is *the* most critical evidence in both of these cases, which arise from the alleged presence of polychlorinated biphenyls ("PCBs") in the high school buildings, and yet BSD is refusing to cooperate in allowing reasonable time for inspections. Failing to give Defendants an opportunity to inspect the buildings would be irreversibly prejudicial.

As explained below, Defendants have done everything they can think of to proceed reasonably under the circumstances: (1) as soon as the press reported BSD planned to demolish the buildings in January, Defendants immediately reached out to BSD expressing concern about spoliation and to open a good faith dialogue about inspection; (2) Defendants then issued a subpoena to BSD seeking documents potentially relevant to the inspections; (3) a few days later, Defendants then agreed to substantially narrow their requests, seeking only the documents essential to conduct an inspection; (4) Defendants have now met and conferred with BSD *four times* by Zoom trying to work out a reasonable production and inspection timeline; and (5) finally, as a last ditch effort to avoid court intervention, Defendants proposed a stipulation, attached as **Exhibit A**, which lays out entirely reasonable benchmarks for the parties to exchange documents

---

³ *See Burlington School District v. Monsanto et al.*, Doc. 2:22-cv-215-wks, Doc. No. 1 at ¶ 136, filed December 9, 2022, but not yet served on Defendants.

and conduct inspections *no later than March 15, 2023*.  In other words, Defendants are seeking only a reasonable delay to ensure that a meaningful inspection can proceed.

On Friday afternoon, BSD categorically rejected Defendants' stipulation, explaining that "nothing" in it was acceptable, and not offering any alternative timeline or other accommodation.  Indeed, to date, even though BSD has produced thousands of pages of materials from third-party consultants, BSD:  (1) has produced *none* of its own documents (but claims to have hundreds of boxes of documents); (2) has produced no documents responsive to numerous, essential categories of subpoenaed materials; (3) has refused to commit to a date by which subpoena compliance will be achieved (as of today, BSD's response is nowhere near complete, and is in fact overdue); and (4) most importantly, has refused to agree that the high school will be preserved until reasonable inspections can occur.

The stakes are simply too high to play a game of chicken with a wrecking ball, especially when the delay being sought is reasonable and necessary.  With the timing and equities as they are, and with allegedly tens if not hundreds of millions of dollars at issue, a reasonable pause on demolition is appropriate to allow this critical evidence to be inspected and preserved.  Conversely, failure to preserve the buildings so that reasonable inspections can be conducted would constitute clear – and easily avoidable – spoliation, resulting in significant prejudice to Defendants that could undermine these actions entirely.

Given the extremely tight timing, Defendants request expedited briefing and an emergency hearing.  Defendants will make themselves available for an emergency hearing on these matters at the Court's convenience.

## BACKGROUND

This is a personal injury action arising from the design and construction of Burlington High School nearly sixty years ago. Plaintiffs Tracy L. Rubman, James E. Baker, and Kathy A. Lothian ("Plaintiffs") seek damages from Defendants related to the historical manufacture and sale of PCBs prior to 1977. (Doc. No. 1, ¶ 29.) Ms. Rubman and Ms. Lothian, who worked at Burlington High School between 2015 and 2022, claim to have suffered adverse health consequences from being exposed to Defendants' PCBs at Burlington High School. (*Id.* ¶¶ 2, 4.)

Plaintiffs filed the instant Complaint on October 5, 2022, and served Defendants on October 10 and 11, 2022. (*See* Doc. Nos. 1, 5–10.) On October 13, 2022, BSD announced it intended to file its own lawsuit against Defendants aiming to "aggressively seek compensation" for Defendants' alleged contamination of Burlington High School.[4] On November 11, 2022, Defendants learned through the media that despite the fact that BSD had yet to file a lawsuit, BSD intended to begin demolishing the high school campus "by January" 2023.[5]

That same day, defense counsel reached out to counsel for BSD by email, raising concerns about the timing of inspections relative to demolition. Defense counsel wrote, in relevant part:

> Media reports this week indicate the school district intends to proceed with demolition as soon as January. We're concerned that doesn't allow enough time for proper inspection of the high school in connection with the Rubman litigation that has already been filed, or the school district litigation that is described in the media as forthcoming. I'd like to discuss the timing of inspections relative to demolition with you as soon as possible. Obviously we need to avoid spoliation.

(Nov. 11, 2022 correspondence between counsel, attached as **Exhibit B**.) BSD responded, also on November 11, indicating its awareness of the spoliation concern and conveying a willingness

---

[4] *Burlington School District to Sue Monsanto Over PCB Contamination*, VT Digger, Oct. 13, 2022, *available at* https://bit.ly/3W7a9LG.

[5] *See Voters Approve Bond to Build New Burlington High School and Technical Center*, Vermont Biz Magazine, Nov. 11, 2022, *available at* https://bit.ly/3HucBYJ.

to confer about potential solutions. The following week, after a telephone conversation between counsel on November 14 to discuss the need for preliminary document production in advance of any building inspections, on November 18, 2022, Defendants issued a subpoena to BSD seeking production of documents relevant to this lawsuit. (*See* Defendants' Nov. 18, 2022 Subpoena, attached as **Exhibit C**.)

Four days later, on November 22, 2022, counsel met and conferred for the first time by Zoom. On that call, and considering BSD's tight demolition timeline, Defendants agreed to narrow the scope of their subpoena by focusing only on the documents Defendants' experts must review before inspecting the high school. (*See* Defendants' Nov. 23, 2022 email to BSD, attached as **Exhibit D**.) Defendants' reduced document requests focused on materials relating to (a) the construction/design of the high school, (b) renovations, (c) maintenance, (d) testing, and (e) the working locations and conditions of Plaintiffs. Thereafter, in a further effort to assist BSD with its search for relevant documents, Defendants provided BSD a list of search terms to focus the document collection process even more. (*See* Defendants' Dec. 8, 2022 email to BSD, attached as **Exhibit E**.)

On December 2, 2022, BSD responded to Defendants' narrowed document requests by asserting objections to every single request, and then producing what appears to be approximately 3,000 pages of publicly available testing data from 2019 to the present. (*See* BSD's Dec. 2, 2022 letter to Defendants, attached as **Exhibit F**.) BSD did not produce *any* documentation prior to 2019, even though Burlington High School was constructed in 1964; in other words, no building maintenance or testing materials were produced for a 55-year period.[6]

---

[6] It was also at this time that BSD specifically disclosed for the first time that demolition was to begin on January 10, 2023.

On December 14, 2022, BSD provided an update on both its document collection efforts and BSD's demolition plans, in particular noting as to the latter that a number of regulatory hurdles still needed to be cleared before demolition could commence, and therefore that demolition was unlikely to proceed in January as previously indicated. (*See* BSD's Dec. 14, 2022 email to Defendants, attached as **Exhibit G**.)

Given BSD's representations, on December 15, Defendants proposed a stipulation that would facilitate document exchange with the ultimate goal of conducting inspections no later than March 15, 2023. (*See* Exhibit A.) On December 16, Defendants met and conferred over Zoom with BSD regarding the proposed stipulation. BSD made clear that there was no aspect of the stipulation that it could agree with.

On December 16 and 17, 2022, Plaintiffs produced another set of documents, including approximately 35,605 pages of material from BSD's third-party consultants. BSD did not identify Defendants' document request(s) that these documents are responsive to. Additionally, given that the documents were produced via "load file",[7] Defendants have not had the opportunity to review every single page of production. However, Defendants' preliminary review indicates that BSD is still nowhere near complying with Defendants' subpoena. None of the production includes historical documentation from the school, including documents related to the construction/design of the high school, renovations, and maintenance. Indeed, BSD has still not produced *any* documentation prior to 2019.

Defendants cannot perform meaningful inspections without understanding what is being inspected. Indeed, Defendants' experts must review the relevant background documentation in

---

[7] Instead of producing documents in their native form, like PDF or xls, load files produce data via individual tiff images so that they can be uploaded to document management software. Although this method of production is not improper, load files require more processing time because third-party vendors often need to be involved in the upload process.

6

order to perform a meaningful inspection. As Defendants' engineering expert, Wayne Hubbard, explains in an Affidavit attached hereto as **Exhibit H**, Defendants' experts must engage in a careful and detailed review of "building engineering and maintenance documents" before an inspection can occur. (Hubbard Affidavit, ¶ 4.)[8] Such documents include critical information needed to "understand the mechanical design and operation of the buildings' mechanical systems, both as originally designed and as modified over time." (*Id.* ¶ 6.) Without reviewing this background documentation, "an engineer would essentially be 'walking blind' through buildings" and it would be difficult for experts to "meaningfully understand and assess the operation, condition, and functionality of the buildings' mechanical systems." (*Id.* ¶ 7.)

## DISCUSSION

"[C]ourts are empowered to issue orders enforcing a party's preservation obligations, especially where the failure to preserve poses an unacceptable risk of undermining the integrity of the judicial process or preventing an adjudication on the merits altogether." *Toussie v. Allstate Ins. Co.*, No. 15CV5235ARRCLP, 2018 WL 2766140, at *3 (E.D.N.Y. June 8, 2018) (subsequent history omitted). Preservation orders are even "more pressing" when evidence is in the possession of nonparties that have no duty to preserve absent a court order. *Bright Sols. for Dyslexia, Inc.*, 2015 WL 5159125, at *3; *Arkin*, 2016 WL 3959611, at *2 ("[B]ecause WestFax is not a party to this litigation and has no duty to preserve evidence absent a court order, the need for preservation is all the more pressing."). To determine whether a preservation order is necessary, the Court considers:

> 1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; 2) any irreparable harm likely to result to the party seeking the preservation of evidence absent an order directing preservation; and 3)

---

[8]     Defendants could readily provide similar affidavits from several of its experts. However, it would be prejudicial and burdensome to force Defendants to disclose all of its experts before fact discovery has even begun.

7

the capability of an individual, entity, or party to maintain the evidence sought to be preserved, not only as to the evidence's original form, condition, or contents, but also the physical, spatial and financial burdens created by ordering evidence preservation.

*Toussie v. Allstate Ins. Co.*, No. 15-CV-5235 (ARR)(PK), 2018 WL 11451597, at *3 (E.D.N.Y. Aug. 15, 2018) (citation omitted).[9] All three of these factors weigh in favor of a court order preserving Burlington High School until Defendants have a reasonable opportunity to conduct meaningful, informed inspections.

### A. Absent Court Intervention, Burlington High School And All Of The Evidence Within It Will Be Destroyed On January 23, 2023.

An immediate preservation order is necessary because BSD will begin destroying Burlington High School on January 23, 2023. Courts have held that preservation orders are necessary when there is a specific, imminent threat that a nonparty will destroy evidence relevant to the case before the court. *See Bright Sols. for Dyslexia, Inc.*, 2015 WL 5159125, at *3 (ordering preservation on nonparties where "Plaintiffs . . . established that, based on their prior experience with eBay, PayPal, and Google and those entities' regular business practices, user data is routinely destroyed within months after a user deletes that information"); *Arkin*, 2016 WL 3959611, at *2 (same).

Moreover, this preservation factor requires courts to focus on "maintaining the integrity of the evidence in a form as close to, if not identical to, the original condition of the evidence." *Capricorn Power Co. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 435 (W.D. Pa. 2004). This factor is easily met in this case. BSD has announced that it will begin destroying the Burlington High School campus on January 23, 2023. If the school buildings are destroyed,

---

[9] "Other courts have adopted a more streamlined test that simply 'requires that one seeking a preservation order demonstrate that it is necessary and not unduly burdensome.'" *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 370 (S.D.N.Y. 2006) (citation omitted) (noting that the distinction between the two tests is "more apparent than real"). Under either test, Defendants are entitled to an order preserving Burlington High School.

Defendants will lose all ability to test, preserve, and inspect evidence related to not only this case, but also to BSD's $190 million lawsuit to recoup costs of building a new high school. To date, BSD has given Defendants no assurances that it will delay demolition until inspections can occur.

### B. Defendants Will Suffer Irreparable Harm If The High School Is Demolished.

Defendants will lose all ability to defend themselves from claims in this lawsuit and in the lawsuit by BSD if BSD destroys the high school before inspections can occur. Preservation orders are necessary when the evidence at issue is "one-of-a-kind" and "integral and essential to a party's case." *See Capricorn Power Co*., 220 F.R.D. at 435 (noting that both "one-of-a-kind" evidence, as well as evidence that is "integral and essential to a party's case," may require a preservation order even in the absence of significant concern of loss or destruction).

In this case, the Burlington High School campus is a textbook example of unique, one-of-a-kind evidence that must be preserved until Defendants can inspect the school. The high school must be preserved in its current state for appropriate inspections to be conducted. For example, if the buildings are demolished, Defendants experts cannot inspect the building's mechanical systems, let alone assess how those mechanical systems operated when Plaintiffs were allegedly exposed to PCBs.

Additionally, Defendants must have background documentation to effectively inspect the school. As Mr. Hubbard explains in his affidavit, without understanding the mechanical design and operation of the high school campus as it was originally designed and as it was modified over time, Defendants' experts would "essentially be walking' blind" through the high school. (Hubbard Affidavit, ¶ 7.) Defendants' experts must be given the time to meaningfully understand the buildings so that they can assess, test, and preserve evidence that is the subject of Plaintiffs and BSD's multi-million dollar claims. (*See id.* ¶ 7.)

9

Finally, Defendants cannot simply rely on BSD's prior sampling and testing for PCBs and other substances. *See Toussie*, 2018 WL 2766140, *8–9 (finding defendants' pictures insufficient preservation given that "both parties may need experts to examine particular items to resolve [factual] disputes, and the trier of fact may need to examine some of the items to determine if in fact, as plaintiffs claim, the items in the boxes are 'pristine' and 'unused'"); *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 50 (S.D.N.Y. 2010) (finding in the context of spoliation that "[i]t is clear that an actual examination of the allegedly infringing jewelry would have provided a stronger foundation for [plaintiff's] experts' opinions. Photographs are a poor substitute for the actual pieces"). Defendants' experts must be permitted to apply their own testing methodologies to challenge Plaintiffs and BSD's contamination allegations. Moreover, Defendants' inspections will be far broader than the narrow issue of PCB contamination. For example, Defendants' experts must be permitted to examine and test for non-PCB contaminants that may have caused Plaintiffs' injuries. Indeed, the records thus far produced by BSD document extensive asbestos and lead issues at the high school.

### C. BSD's Burden Is Minimal And BSD Is Solely Responsible For Demolition Delays.

BSD's burden to preserve and maintain the high school is minimal. Defendants are not seeking a lengthy, protracted delay. Instead, Defendants request that the Court pause demolition for no more than a reasonable period of time to allow Defendants' experts to review critical background documentation and inspect the school. Defendants are not proposing a specific time period for delay for the simple reason that Defendants have no control over when BSD will produce necessary records. Defendants did their part and promptly subpoenaed the needed records. That subpoena was met with serial objections, making motion practice of unknown length inevitable. Defendants expect that once they receive the subpoenaed documents, Defendants' experts will

require no more than two weeks to review that material, and then the multi-disciplinary inspection will take roughly 5 days. Once Defendants' inspections are completed, Defendants have no objection to BSD demolishing the high school.

To the extent that any harm or expense results from this reasonable requested delay, BSD is responsible for it. As chronicled above, Defendants reached out immediately and in good faith in hopes of avoiding a delay in demolition. Despite Defendants' efforts, BSD has objected to or been unable to produce the documents requested. It would appear that this is at least in part due to the fact that despite allegedly discovering PCBs in the school in 2019,[10] BSD waited over three years, until Defendants issued a subpoena in 2022, to begin searching for relevant documents.[11] Because BSD's last-minute scramble to gather necessary documents is a crisis of its own creation, a preservation order is reasonable and warranted in these circumstances. *See Capricorn Power Co.*, 220 F.R.D. at 435 (preservation orders can be avoided if "parties take immediate action to obtain or reproduce from the evidence the information needed; however, if the parties are not cooperative in this situation, then an order directing the preservation of the evidence in question in a manner that will preserve the whole of the evidence for the benefit of all parties may be necessary"). Moreover, BSD has given Defendants no reason why a reasonable delay in its demolition schedule would be prejudicial to BSD given that the renovation process began nearly four years ago in 2019.

---

[10] BSD's July 15, 2019 Phase II Environmental Assessment indicated that soil samples from the high school contained PCBs that exceed the VT Urban Background Soil Standards and non-residential Vermont Soil Standards. (*See* ACT 2019 Limited Phase II ESA for Burlington High School, July 15, 2019, at 2, attached as **Exhibit I**.)

[11] It appears BSD publicly accused Defendants of contaminating the high school without searching for basic documentation supporting its claims, including the product manufacturers responsible for selecting, installing, purchasing, selling, or manufacturing building products allegedly containing PCBs.

## **CONCLUSION**

For the reasons set forth above, Defendants respectfully request this Court enter an order delaying demolition of Burlington High School for a reasonable period of time to allow Defendants to conduct inspections and preserve evidence.

Dated: December 19, 2022

                            **DEFENDANTS**

                            /s/ *Ian P. Carleton*
                            Ian P. Carleton, Esq.
                            Devin T. McKnight, Esq.
                            Alexandrea L. Nelson, Esq.
                            SHEEHEY FURLONG & BEHM P.C.
                            30 Main Street, 6th Floor
                            PO Box 66
                            Burlington, VT 05402-0066
                            (802) 864-9891
                            icarleton@sheeheyvt.com
                            dmknight@sheeheyvt.com
                            anelson@sheeheyvt.com