UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Tracy L. Rubman; James          )
Ellery Baker; Kathy A.          )
Lothian,                        )
                                )
    Plaintiffs,                 )
                                )
       v.                      )   Case No. 2:22-cv-181
                                )
Bayer AG; Monsanto Company;     )
Bayer CropScience L.P.;         )
Solutia, Inc.; Pharmacia,       )
L.L.C.; Pharmacia, Inc.; and    )
Pharmacia Corp.,                )
                                )
    Defendants.                 )

### OPINION AND ORDER

Plaintiffs Tracy Rubman, James Baker and Kathy Lothian bring this action claiming harm resulting from exposure to polychlorinated biphenyls ("PCBs"). Defendants Monsanto Company, Bayer CropScience L.P., Solutia Inc., and Pharmacia L.L.C. ("Defendants") move to dismiss Plaintiffs' claims of misrepresentation (Count IV), spoliation (Count V), and violations of the Vermont Consumer Protection Act (Count VII), arguing failure to state a claim. Plaintiffs concede that Counts V and VII may be dismissed. Remaining at issue is whether Plaintiffs' misrepresentation claim, set forth at Count IV, states a claim upon which relief can be granted. For the reasons set forth below, Defendants' partial motion to dismiss is granted as to Counts V and VII and denied as to Count IV.

## Background

The Complaint alleges that Rubman and Lothian, while working as special education teachers at Burlington High School ("BHS"), were exposed to PCBs and suffered adverse health consequences as a result. Rubman was employed at BHS between 2016 and 2022, and Lothian between 2015 and her retirement in 2020. Plaintiff Baker is Rubman's spouse and brings a loss of consortium claim. The PCBs in question were produced by Defendant Monsanto Company ("Monsanto").

The Complaint alleges that between 1929 and 1977, Monsanto was the only manufacturer of PCBs in the United States for commercial use. In the late 1970s, the United States banned their manufacture and distribution after the Environmental Protection Agency concluded that PCBs are toxic. The Complaint alleges that Monsanto knew the health risks of PCBs for decades prior to the ban but failed to stop producing or distributing its product.

PCBs allegedly entered school buildings in various ways, as for many years they were incorporated as plasticizers in caulking, paints, ballasts, sealants, and other applications. Sampling at BHS reportedly found PCBs in the school's building materials, including caulking. The Complaint claims that caulking emits PCBs into the air, which can then migrate to nearby materials, soils, and people.

2

PCBs were also produced as components of electrical equipment such as transformers, motor start capacitors, and lighting ballasts. Although PCBs evaporate slowly at room temperature, volatility increases with a rise in temperature, and overheated equipment can allegedly create an inhalation hazard. The Complaint asserts that this impact is magnified where there is poor ventilation.

BHS was built in 1964. PCBs manufactured between the 1940s and the 1970s were allegedly used in electrical equipment and construction at the school. In November of 2018, BHS was reportedly approved for a major renovation project. The Complaint alleges that an environmental assessment is a standard early step in a such a project. When BHS received a report revealing PCB levels in every building at the school, the reconstruction project team determined that the current campus was too contaminated to renovate and opted instead to find a new location for the school. Plaintiffs Rubman and Lothian both worked in Building F, which reportedly showed the highest PCB levels on the BHS campus.

Plaintiff Rubman claims to have suffered physical harm, including two miscarriages and a diagnosis of hyperthyroidism, due at least in part to her exposure to PCBs. Plaintiff Lothian has allegedly experienced severe cognitive impairments, including memory loss, confusion and brain fog. The Complaint

3

asserts the following seven causes of action: strict liability; negligence; failure to warn; misrepresentation; spoliation; loss of consortium; and violation of the Vermont Consumer Protection Act. For relief, Plaintiffs seek damages for physical and emotional injuries, medical expenses and lost income, and punitive damages.

Defendants inform the Court that in March 2000, Monsanto changed its name to Pharmacia Corporation, now known as Pharmacia L.L.C. The remaining Defendants, by virtue of various corporate transactions and agreements, may share or be responsible for Monsanto's liability with respect to its past production of PCBs.[1]

Pending before the Court is Defendants' motion to dismiss the misrepresentation (Count IV), spoliation (Count V), and Vermont Consumer Protection Act claims (Count VII) pursuant to Federal Rule of Civil Procedure 12(b)(6). In response to the motion to dismiss, Plaintiffs agree that Counts V and VII may be dismissed. Remaining at issue is the misrepresentation claim set forth in Count IV.

---

[1] Defendants report that Pharmacia, Inc. and Pharmacia Corporation, as named in the Complaint, do not exist.  ECF No. 20 at 1 n.1.  They also attest that Bayer CropScience L.P. is not a proper Defendant because it never manufactured, sold, or promoted PCBs or held any interest in a company that has, and that they will be moving for its dismissal as a matter of law. *Id.*

## Discussion

### I. Motion to Dismiss Standard

Under Rule 12(b)(6), a claim may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 579 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [their] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the Complaint as true and draw all reasonable inferences in the Plaintiffs' favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). The Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the

elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

## II.  Misrepresentation

### A.  Factual Claims

Plaintiffs allege that as early as 1937, Monsanto was aware that inhalation of PCBs in industrial settings resulted in toxic effects on humans. In the 1950s, internal Monsanto documents confirmed the company's knowledge that PCBs are toxic, as the company warned that lunches should not be eaten in the areas where PCBs were manufactured. Subsequent studies found PCBs to be harmful to animals and the environment generally.

The Complaint alleges that "[d]espite its unique knowledge, Monsanto chose not to warn its customers and the public regarding the human health dangers of [its] PCBs, instead concealing the same." ECF No. 1 at 19, ¶ 69. The Complaint further alleges that Monsanto knew or should have known that schools were not appropriate for PCBs, but made no effort to warn BHS, parents of BHS students, or teachers and staff at BHS. In support of their misrepresentation claim, Plaintiffs allege that Monsanto "actively and/or negligently concealed and/or omitted material facts as to what Monsanto knew and when it knew about the ... risks of PCBs." *Id.* at 32, ¶ 136. Plaintiffs submit that Rubman and Lothian reasonably relied on Defendants'

omissions of material facts and failures to disclose their
knowledge of the dangers of PCBs.

### B. Substantive Law

Because the Court has jurisdiction over this case by virtue
of diversity of citizenship, *see* 28 U.S.C. § 1332, it applies
the substantive law of Vermont, the forum state. *See Travelers
Ins. Co. v. 633 Third Assocs*., 14 F.3d 114, 119 (2d Cir. 1994)
("Federal courts sitting in diversity cases will, of course,
apply the substantive law of the forum State on outcome
determinative issues."). "In ascertaining the substantive law of
the forum, federal courts will look to the decisional law of the
forum state, as well as to the state's constitution and
statutes." *Id.* at 119 (citing *Erie R.R. Co. v. Tompkins*, 304
U.S. 64, 78 (1938)). "Where the substantive law of the forum
state is uncertain or ambiguous, the job of the federal courts
is carefully to predict how the highest court of the forum state
would resolve the uncertainty or ambiguity." *Id.*

### C. Nature of the Claim

Count IV of the Complaint asserts a cause of action for
misrepresentation. The Complaint does not specify whether the
alleged misrepresentation was intentional, negligent, or
fraudulent. Perhaps as a result, Defendants' motion to dismiss
initially cites the pleading standard for fraud under Federal
Rule of Civil Procedure 9(b). Defendants further contend that

the facts of case this align most directly with a claim of
fraudulent concealment which, they argue, fails as a matter of
law. ECF No. 20 at 5. Their briefing also addresses Vermont law
on misrepresentation, including negligent misrepresentation.

Plaintiffs' opposition memorandum characterizes their cause
of action as one for negligent misrepresentation. ECF No. 56 at
2. Given that clarification, and because both parties have
briefed that issue, the Court now construes Count IV of the
Complaint as bringing a cause of action for negligent
misrepresentation.

### D.  Negligent Misrepresentation

Vermont has adopted the definition of negligent
misrepresentation set forth in the Restatement (Second) of Torts
§ 552, which provides in part:

> One who, in the course of his business, profession or
> employment, or in any other transaction in which he
> has a pecuniary interest, supplies false information
> for the guidance of others in their business
> transactions, is subject to liability for pecuniary
> loss caused to them by their justifiable reliance upon
> the information, if he fails to exercise reasonable
> care or competence in obtaining or communicating the
> information.

*Limoge v. People's Tr. Co.*, 168 Vt. 265, 269 (1998) (quoting
Restatement (Second) of Torts § 552(1)). Subsection 3 of Section
552 extends liability where there is a "public duty" to provide
information:

8

> The liability of one who is under a public duty to
> give the information extends to loss suffered by any
> of the class of persons for whose benefit the duty is
> created, in any of the transactions in which it is
> intended to protect them.

Restatement (Second) of Torts § 552(3).

Defendants argue that a negligent misrepresentation claim is limited to business transactions, and that Plaintiffs must plead a transaction in which the dangerous nature of PCBs was material. As to nature of the transaction, Vermont courts have applied Section 552 not only to commercial transactions, but also to transactions involving consumers. *See, e.g., Silva v. Stevens*, 156 Vt. 94, 108 (1991) (applying Section 552(1) in the context of the purchase of a home).  And assuming that materiality is a required element, that issue is yet to be proven, although it certainly plausible that BHS would not have purchased building materials had it known that those materials were harmful to human health.

Defendants also contend that Plaintiffs have failed to identify a duty to disclose. Plaintiffs counter that the duty to disclose is evident in their strict liability and failure to warn claims, and highlight their claim that Monsanto knew of the danger of PCBs for decades. Applying general negligence principles, a duty exists as a matter of "fairness," depending upon, "among other factors, the relationship of the parties, the nature of the risk, and the public interest at stake." *Kellogg*

9

*v. Wyeth*, 762 F. Supp. 2d 694, 705 (D. Vt. 2010) (citing *Hamill v. Pawtucket Mut. Ins. Co.*, 2005 VT 133, ¶ 6). Here, such considerations strongly suggest a duty to disclose.

That said, negligent misrepresentation is different from general negligence as it "is not founded on a general duty to all who might be harmed by the defendant's acts. The duty runs only to particular classes of victims for particular purposes." *Glassford v. Dufresne & Assocs., P.C.*, 2015 VT 77, ¶ 43 (Robinson, J., dissenting) (quoting Restatement (Third) of Torts § 5, Reporter's Note). This limitation on the scope of liability is reflected in Section 552(3), which extends liability to "persons for whose benefit the duty is created." Restatement (Second) of Torts § 552(3). Applying such a limitation here, as well as the plausibility standard, the Court finds it plausible that when materials were purchased for construction of BHS the transaction was intended to benefit the students, faculty and administrators who would spend their days in the school, and those parties were owed a duty of disclosure.

Both parties agree that a misrepresentation claim also requires justifiable reliance. Defendants submit that such reliance must be direct, and cannot be based upon a third-party's reliance. For support, they rely on *Glassford*, in which the Vermont Supreme Court considered home buyers' reliance on a wastewater certification submitted to the State. The court noted

that "[t]he necessary piece in this puzzle is that the plaintiff actually received or was made aware of the false statements and directly relied on those false statements." *Glassford*, 2015 VT 77, ¶ 23. Noting that the plaintiffs "never actually viewed the certificate," that court held that "indirect reliance is insufficient to render defendant liable for its allegedly false information." *Id.*, ¶ 24.

This case differs from *Glassford* in that, here, Plaintiffs relied upon omissions of fact rather than direct statements. Those omissions occurred initially at the time of construction, and the duty to disclose arguably increased as Defendants' knowledge about PCBs developed. Under Section 552(3), Defendants owed a "public duty" to the intended beneficiaries of the transaction to make appropriate disclosures, and it was those beneficiaries (allegedly including teachers at the school) who relied on Defendants to uphold that duty. Restatement (Second) of Torts, § 552(3).

Beyond the question of duty, Defendants argue that any reliance was not justified since the public has known since at least the late 1970s that PCBs are harmful. As alleged in the Complaint, however, it was not until 2019 that an inspection of BHS allegedly revealed dangerous levels of PCBs in the building where Plaintiffs worked.

11

The Vermont Supreme Court has noted that justifiable reliance is an objective standard, and has upheld the following jury instruction: "[p]laintiffs may justifiably rely upon a representation when the representation is not obviously false and the truth of the representation is not within the knowledge of, or known by plaintiffs." *Burgess v. Lamoille Hous. P'ship*, 2016 VT 31, ¶ 22 (quoting *McGee v. Vermont Fed. Bank*, 169 Vt. 529, 531 (1999) (mem.) (quotation omitted) (emphasis omitted)). Here, accepting the facts alleged in the Complaint as true, BHS was unaware of PCBs in its buildings until 2019. Plaintiffs' own knowledge, and whether their reliance on Defendants' alleged omission was objectively justified, may be explored in discovery. At this early stage in the case, however, the Court will not dismiss their negligent misrepresentation cause of action for failure to state a claim.[2]

### Conclusion

For the reasons set forth below, Defendants' motion to dismiss (ECF No. 20) is granted as to Counts V and VII, and is otherwise denied.

---

[2] Because the motion to dismiss is resolved in Plaintiffs' favor under existing Vermont law, the Court need not consider their request to review the allegations under Restatement (Second) of Torts §§ 310 and 311, which Vermont has not adopted. *See, e.g., Kellogg*, 762 F. Supp. 2d at 706 n.7; *Repucci v. Lake Champagne Campground, Inc.*, 251 F. Supp. 2d 1235, 1238 n.2 (D. Vt. 2002).

DATED at Burlington, in the District of Vermont, this 24th day of March, 2023.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge